STOKELY & SUSONG *v.* SLAYDEN *et all.*

STATUTE OF LIMITATIONS. In 1823 K., the owner in fee of a tract of land, intermarried with F. In 1826 F. sold the land to C., and gave him bond for title; C. held the land under actual enclosure until 1831, when he died. It came through a regular chain of conveyances to the defendants. K., the original owner, died in 1856, and F. survived until 1869. The plaintiffs, daughters of K., brought this action to recover in January, 1871. The adverse holding of the land by the various parties in possession commenced in 1826. ' *Held*, that plaintiffs were barred by twenty years adverse possession, and were not entitled to recover.

Cases cited: Guion *v.* Anderson, 8 Hum., 298; Wersign *v.* Murphy, 2 Head, 674.

---

FROM COCKE.

---

Appeal from the Circuit Court. JAS. H. RANDOLPH, Judge.

SWAN & BURTON for plaintiff.

ROBERT McFARLAND for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

In 1823 Elizabeth Keener being the owner in fee of a tract of land, intermarried with Joseph Francis. In 1826 Joseph Francis sold the land to F. J. Carter, and gave him his bond for title. No deed was ever made by Francis to Carter. Carter held the land under actual enclosure until 1831, when he died. Upon his death his three sons took possession and partitioned the land among them in 1843 by written

evidence of partition. The land in controversy fell' in the partition to William and Crockett Carter, who. held it until 1868, when Susong & Stokely bought under chancery decree. The holding of Francis Carter and his two sons and of Susong & Stokely had been adverse since 1826.

The wife of Joseph Francis died in 1856. Joseph .Francis survived her, and died in 1869. Mrs. Francis had two daughters who are the plaintifis in this suit..

'The action was brought on the 9th of January, 1871. The defendants rely upon statute of limitations. and lapse of time.

It is clear that the title to the land was in Mrs. Francis when she died in 1856, and that it then descended to plaintiffs. If they could then have brought suit for it, their failure to sue until January, 1871, is. fatal to their case.

It is said, however, that they had no right to sue before the death of Joseph Francis in 1869, by reason of his life estate as tenant by the courtesy continuing until that time. If this is true, then their suit is. brought in good time and they should recover.

The case turns then upon the existence or nonexistence of Joseph Francis' life estate as such tenant at the death of his wife in 1856.

His contract of sale with Carter communicated no. title. He undertook to convey the title in fee, but he had no other interest in the land than that acquired by becoming the husband of Mrs. Francis, an. estate of freehold in the inheritance of his wife, which may continue during their joint lives, or by possibility

Stokely & Susong *v.* Slayden.

may last during his own life.    He had no particular
estate or interest separate from. the title in his wife.
If he had made a fee simple warranty deed to Car-
ter, it would have vested no title in him, but such
deed would have estopped him from suing for the
land, and would have prevented his wife from suing,
as she could not sue alone.    But upon the death of
his wife his tenancy by the courtesy would have ac-
crued, and under his deed would have inured to the
benefit of Carter, and would have continued during
his life, thus creating an obstacle to a suit by his
wife's heirs.

But Carter goes into possession under a title bond
executed by Francis.    This bond vests no title in
Carter, and none can be vested in him by virtue of
his possession until it has continued for twenty years
adversely to all the world.    When Mrs. Francis died
in 1856 this adverse possession had continued for
thirty years.    The presumption of proper conveyance
or of a grant arose at the end of twenty years.
This presumption was fatal to the freehold estate of
Francis, not because of his title bond, but by reason
of his failure to sue for twenty years, his bond being
no obstacle to his suit, and by operation of the twenty
years adverse possession by Carter.

The presumption of a grant would have been ef-
fectual against Mrs. Francis' title, but for the proviso
which secured to her as a married woman exemption
from its operation during the coverture, and to her
heirs exemption from its operation for three years
after her death.    But her husband, Francis, was under

no disability, and therefore, when his wife died his tenancy by the courtesy could not take effect, because, as to him, Carter's presumed grant was an insuperable obstacle. He had lost all the interest he ever had by virtue of his marriage, by failing to sue in twenty years. Carter's title was not merely the life estate of Francis, as it would have been if he had held the land under a warranty deed from Francis, but he rested on an independent fee simple title created by presumption of law, and which must prevail over any other title, than that of some one against whom it could not operate because of existing and continuing disability. Such a title was in Mrs. Francis, and upon her death it was in her heirs, subject to be arrested by suit for three years after her death. At her death Joseph Francis could not sue for the land, not because his bond was any estoppel, as would have been the case if he had made a deed to Carter, but because he had no title left, after more than twenty years adverse possession, which he could assert. Carter did not hold under a transfer or conveyance of Francis' life estate as tenant by the courtesy, and therefore there was no obstacle to a suit by Mrs. Francis' heirs after her death, and having failed for fifteen years after her death to bring suit, their claim is forever barred.

But it is said, that although Francis' title bond was not an obstacle to an ejectment by Francis and wife against Carter, yet that Carter might have resorted to a court of equity, and filed his bill for a specific execution of the bond and to enjoin the ejectment, and

Stokely & Susong *v.* Slayden.

there the obstacle was merely technical and not sub-
stantial. In answer it is submitted, first, that the
reason why the vendor of land, to which he has only
the estate of a husband, is estopped from suing after
he has executed a deed, is, that his deed divests him
of whatever estate he had, and vests it in the vendee.
It is the fact of divestition of title that constitutes
the estoppel. Second, Francis by his title bond neither
conveyed nor purported to convey any estate whatever
to Carter; his bond was no more than his personal
obligation, for a breach of which he would be liable
to damages. Carter got no sort of title or estate,
legal or equitable, by the bond; he got the possession
and nothing more with Francis' obligation for damages
if he failed to make a fee simple title.

This being so, on what ground could Carter have
gone into equity to enjoin an ejectment suit by Francis
and wife? He could only rely on his bond, but
this neither gives nor purported to give any title of
any kind. Francis had no right to convey his wife's
estate, and he had none of his own except his right
as husband, and these constituted no particular estate
subject to such sale and conveyance as could be spe-
cially executed by a court of chancery. All he could
do would be to seek a specific execution of the bond,
and that a court of chancery could not grant. But
Francis' bond did not purport to convey any estate
either of himself or wife; it was merely evidence that
Carter was in possession with Francis' consent, and
that Carter had a right to claim damages if that pos-
session should not be perfected by Francis with a fee

simple title.   It seems to follow necessarily that Carter could not have gone into equity to resist an eject-ment suit by Francis and wife.   He would have been repelled, first, because he had neither legal or equita-ble title, and second, because his remedy on his bond was embarrassed at law, and third, because he could only seek in chancery a specific execution, and the granting of that would be in the discretion of this court.   But it is further said, that upon the death of Mrs. Francis in 1856 her heirs could not sue, because Carter and those who succeeded him were holding under the title derived from Francis, which title was good until his death.

It is conceded that this would be the case, if Francis had conveyed to Carter by deed.   Carter would then have had all of Francis' interest, including tenancy by the courtesy, and of consequence no suit could be brought until that tenancy terminated by his death.   But Carter did not get Francis' interest under his title bond.   After the partition of the land in 1843 among the children of Carter there was a divis-ion of the joint estate of Francis and wife, and the children of Carter held adversely to Francis and wife under their deeds of partition, and not by virtue of any title from Francis.   Long before 1856, when Mrs. Francis died, the right of Francis to sue had been barred, and upon her death there was no title either in Francis or in the Carter's which was any obstacle to a suit by Mrs. Francis' heirs.   The statute which had been running against Mrs. Francis run against them, but they had three years within which to sue.

Not having done so they are barred. *Guion* v. *Anderson,* 8 Hum., 298; *Wersign* v. *Murphy,* 2 Head, 674. The judgment is reversed.

TURNEY, J., delivered the following dissenting opinion.

Elizabeth Keener was the owner of the land in suit. In 1823 she married Joseph Francis. Two daughters were born of the marriage.

In 1826 Joseph Francis, the husband, sold the land to Francis J. Carter, gave his bond for title, but never executed a deed· Carter took possession of the land and held it to his death in 1831 or 1832, when his three sons, George, William and Crockett, took possession and held it, after partitien, until it was sold under chancery proceedings in 1868, and purchased by Stokely & Susong, who have held it ever since.

Francis and his wife separated about the year 1828, she going to Missouri, he remaining in Tennessee. In five or six years after the separation they were respectively married to other persons. Mrs. Francis died in 1857, Francis in 1869.

The daughters with their husbands institute this action of ejectment to recover the land, claiming through their mother.

Several questions are presented in argument.

In the view I take of the case, its true solution is, by the marriage the husband acquired an estate of freehold in the land of his wife in her right, and was jointly seized with her. His sale did not divest the

wife of her right. The entry by the purchasers
claiming under the title bond of the husband was a
disseize of the joint estate of husband and wife, and
being continued for seven years, forever barred them
from receiving the joint estate; yet this bar operating
upon the right of the wife could only effect her in-
terest in the joint estate, the death of the husband
would have restored to her the sole right to the land
unembarrassed by the acts the husband. She dying
before the husband, all her rights in or to the estate
descended to her heirs at law, but burdened by his
right to courtesy which vested in him immediately
upon the death of the wife.

The possession of the purchaser from the husband,
and those claiming under them, was merely permissive
as against husband and wife until ripened into a pos-
sessory right against their joint estate by the statute
of limitations. Upon the death of the wife the new
estate of tenant by courtesy vested in the husband,
and gave to him the sole power over the possession.
This tenancy by courtesy and the remainder interest of
the children of Mrs. Francis constituted one estate in
law, but until the termination of the particular estate
the remaindermen had no cause of action in their own
right to sue for and recover the land. It is not in-
sisted that any statute of limitations intervenes from
the death of the father to the commencement of the
suit.

If the parties had lived together until 1869, and
then the husband had died first, it could not be se-
riously insisted that the wife would not have been in

Stokely & Susong *v.* Slayden.

time with her action commenced on the day this suit was commenced, nor will it be contended that she had a sole right of action before the death of the husband.

If the parties had lived together until their respective deaths as they actually occured, it will not be pretented the children would have had a right of action in their sole right before the death of the father, he being tenant by courtesy.

Can these rules be changed by the immoral conduct of the parents?

The gross immoral or even felonious conduct of persons does not ordinarily deprive them of the rights of property.

The circuit judge did right in my opinion in declining to charge that after a separation of five or six years, and the second marriages of the parties, the jury might presume a divorce of the first marrige.

The rule is, that when husband and wife have been separated for a period of seven years, and one has not heard from the other in that time, and knows not of his or her whereabouts, such persons may lawfully marry, but this is so because the law under such circumstances presumes the death of the former husband or wife.

I can see no reason for a modification of the rule in this case, where the parties knew of the whereabouts of each other, and when if a divorce was had it could be readily shown by the records of the courts. of the one State or other.

Nothing could be more subversive of public policy

---

and good morals than the setting of precedents for presumptions, with no basis for such presumptions save the grossest immorality of married persons claiming and occupying respectable relations in life.

The same reasoning disposes of the proposition that "the parties by their conduct abandoned their marital rights."

Upon the principles announced in this opinion, other questions presented in argument upon the charge of the circuit judge could not change the result upon another trial. The merits have been reached, and the judgment I think should be affirmed.